UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

LESLIE ARONE,

               Plaintiff,

    -against-

SAMEDAY TECHNOLOGIES INC. d/b/a
SAMEDAY HEALTH, INC. (F/K/A PRAESIDIUM
DIAGNOSTICS INC. D/B/A SAMEDAY TESTING),
MAERLY PAYROLL PROCESSING LLC, MAERLY LLC,
and MARIA STAUDENBAUR, *Individually*,

               Defendants.

--------------------------------------------------------------------X

Index No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

Plaintiff, by and through Plaintiff's attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

**Nature of the Case**

1.    Plaintiff complains pursuant to the <u>New York State Human Rights Law</u>, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and Article 23-A of the New York Correction Law § 750 – 755 ("NYCL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being <u>discriminated against and having her employment rescinded</u>, solely on the basis of her criminal convictions that have no direct relationship to the position to be held.

2.    New York Correction Law Article 23-A was enacted to eliminate bias against ex-offenders in obtaining employment and remove obstacles to their employment by imposing obligations on employers to deal equitably with ex-offenders while protecting society's interest in hiring and employing reliable and trustworthy persons.

3.    New York Correction Law § 752 states, in pertinent part, that "[n]o application for any license or employment…shall be denied or acted upon adversely by reason of the

individual's having been previously convicted of one or more criminal offenses… unless: (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."

## Jurisdiction and Venue

4.    Jurisdiction of this Court is proper under 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of the State of New York.

## Procedural Background

6.    Plaintiff filed claims against Defendants Sameday Technologies Inc. and Maerly Payroll Processing LLC, based on the allegations set forth herein, on December 8, 2022 (Leslie Arone v. Sameday Technologies Inc. d/b/a Sameday Health, Inc., and Maerly Payroll Processing, LLC; Case 7:22-cv-10374) (hereinafter the "2022 filing" or "2022 action"). Subsequent to the 2022 filing, Defendant MAERLY raised the issue of mandatory arbitration and presented Plaintiff with a mandatory arbitration agreement that Plaintiff had signed, covering the instant claims. As a result, on April 26, 2023, the Parties stipulated to the 2022 action being dismissed *without prejudice* to be submitted to mandatory arbitration with JAMS, per the arbitration agreement. The stipulation was filed with the Court and the 2022 action was closed the same day. Plaintiff filed her claims with JAMS on April 27,

2023.  *After* the case was filed with JAMS, a scheduling order was set by the Arbitrator, and the parties exchanged discovery requests, to which Plaintiff and Defendant Samedy responded, Defendant Maerly Payroll Processing, LLC*, for the first time*, claimed inability to pay the cost of arbitration. Defendant Sameday Technologies Inc. maintains that it is not responsible for the cost of arbitration.  Plaintiff submitted a request to the Court for the 2022 action to be reopened. The request was denied based on the stipulation of dismissal not providing that the Court would retain jurisdiction of the action after it was dismissed.

## Parties

7.    Plaintiff is a resident of the County of Westchester, State of New York.

8.    At all times material, Defendant SAMEDAY TECHNOLOGIES INC. d/b/a SAMEDAY HEALTH, INC. (F/K/A PRAESIDIUM DIAGNOSTICS INC. D/B/A SAMEDAY TESTING) (hereinafter referred to as "SAMEDAY") is a domestic business corporation organized under the laws of the State of California and operating in the State of New York, with its principal place of business located at 523 Victoria Avenue, Venice, California 90291.

9.    At all times material, Defendant SAMEDAY owned, operated, and controlled a healthcare company which provides a variety of medical services to patients throughout the United States.

10.   At all times material, Defendant MAERLY PAYROLL PROCESSING LLC ("MAERLY PAYROLL") is a limited liability company organized under the laws of the State of California and operating in the State of New York, with its principal place of business located at 2146 Crespi Lane, Westlake Village, California 91361.

11.     At all times material, Defendant MAERLY LLC is a limited liability company organized under the laws of the State of California and operating in the State of New York, with its principal place of business located at 2659 Townsgate Rd, Suite 116, Westlake Village, California 91361.

12.     Defendants MAERLY PAYROLL and MAERLY LLC will hereinafter together be referred to as "Defendants MAERLY."

13.     Upon information and belief, at all times material, Defendants MAERLY owned, operated, and controlled a nationwide human resources and staffing agency.

14.     At all times material, Defendants MAERLY contracted with, and provided employee services to, Defendant SAMEDAY.

15.     At all times material, Defendant MARIA STAUDENBAUR ("STAUDENBAUR") was the CEO of Defendant MAERLY PAYROLL and Defendant MAERLY LLC. Upon information and belief, Defendant STAUDENBAUR had the ability to control the terms and conditions of Plaintiff's employment, including, but not limited to make the decision to withdraw Plaintiff's offer of employment with the Defendants.

16.     At all times material, Defendant SAMEDAY employed 4 or more employees.

17.     At all times material, Defendants MAERLY employed 4 or more employees.

18.     At all times material, Defendant SAMEDAY was an employer defined under the NYSHRL.

19.     At all times material, Defendant SAMEDAY was subject to the requirements of the New York Correction Law.

20.     At all times material, Defendants MAERLY were an employer defined under the NYSHRL.

21. At all times material, Defendants MAERLY were subject to the requirements of the New York Correction Law.

22. At all times material, Defendant SAMEDAY and Defendants MAERLY were integrated and/or joint employers of Plaintiff as they had an interrelation of operations, common management, and centralized control of labor relations.

23. Defendant SAMEDAY and Defendants MAERLY are at times collectively referred to herein as "Defendants."

24. At all times material, all parties herein worked and/or continue to be employed by Defendants.

### Material Facts

25. On or about May 11, 2014, Plaintiff was convicted of Operating a Motor Vehicle Under the Influence of Drugs or Alcohol in Clifton Park Town Justice.

26. On or about July 8, 2016, Plaintiff was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree in Saratoga County Court.

27. On or about November 30, 2016, Plaintiff was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree and Operating a Motor Vehicle Under the Influence of Drugs or Alcohol in Warren County Circuit Court.

28. In regards to Plaintiff's rehabilitation and good conduct, Plaintiff has not had any issues with law enforcement since her release from prison in mid-June 2017 ("Release") and maintains a record of good conduct.

29. Since her Release, Plaintiff has been a productive and law-abiding citizen of New York.

30. Since her Release, Plaintiff has successfully maintained gainful employment. Plaintiff's relevant work experience is as follows:

a. Westchester Broadway Theatre Gift Shop from July 2017 through September 2018;

b. Registered Medical Assistant at Westchester Medical Center in June 2019 through March 2020;

c. Registered Medical Assistant for COVID-19 testing at Westchester Medical Center in March 2020 through June 2020;

d. Registered Medical Assistant at Westchester Medical Center in June 2020 through December 2021; and

e. Registered Medical Assistant at Northwell GoHealth Urgent Care on December 20, 2021.

31. Since her Release, Plaintiff has also received various certifications which supports her good conduct and contributions to society. Plaintiff's certifications are as follows:

a. Studied and became a certified Phlebotomy Technician in May 2018;

b. Studied and became a Registered Medical Assistant in November 2018; and

c. Obtained a Certificate of Good Conduct from New York State Department of Corrections and Community Supervision on May 19, 2022.

32. In or around May 2022, Plaintiff applied for the position of Certified Medical Assistant with Defendants.

33. On or about May 25, 2022, Plaintiff had a virtual interview with Sofia Gogina ("Gogina"), Defendant SAMEDAY's Lead Clinical Recruiter.

34. On or about May 27, 2022, Plaintiff received an application via e-mail from Gogina. Plaintiff promptly filled out the application and returned it to Gogina.

35. On or about June 3, 2022, Plaintiff received a phone call from Wilbert James ("James"), a Manager of Defendant SAMEDAY in White Plains, New York. James subsequently

offered Plaintiff the position of Certified Medical Assistant with Defendants SAMEDAY. Plaintiff was ecstatic.

36.    As a full-time Certified Medical Assistant, Plaintiff was expected to earn $25.00 per hour, or approximately $52,000 per year, excluding benefits.

37.    Shortly after offering Plaintiff a position, James e-mailed Plaintiff an application. Plaintiff again promptly filled out the application and provided it to James.

38.    On or about June 6, 2022, Plaintiff e-mailed James to follow up on her application.

39.    On or about June 9, 2022, Plaintiff e-mailed Gogina to inquire the status of her application. Gogina stated, in sum and substance, "onboarding can be a lengthy process. I spoke with [James] and he said he forwarded your application to HR."

40.    On or about June 12, 2022, Plaintiff e-mailed Defendant SAMEDAY's Human Resources Department to check the status of her application.

41.    On or about June 13, 2022, "Norma" from Defendant SAMEDAY's Human Resources Department e-mailed Plaintiff and informed her that "workflow" was e-mailed to her on June 6, 2022. Plaintiff stated that she did not receive the "workflow," and requested that it be resent.

42.    On or about June 14, 2022, "Norma" contacted Plaintiff asking for a call.

43.    On or about June 15, 2022, Plaintiff called "Norma," who assisted in getting her "workflow" started with ADP. Plaintiff provided information regarding, *inter alia*, her social security card, tax information, direct deposit, and a background check.  Plaintiff was unable to provide information for her car insurance and registration as she did not have a driver's license. Plaintiff subsequently signed a waiver to sign off on her driving privileges.

44.    On or about June 20, 2022, Plaintiff contacted James and informed him that her information

was completed on ADP and inquired about a work schedule.

45.    On or about June 21, 2022, Plaintiff received an e-mail from "Alex" who indicated that he

received all of her paperwork.

46.    On or about June 21, 2022, Plaintiff received a written offer of employment with

Defendants "on behalf of Sameday and Maerly Payroll Processing" from a Defendant

SAMEDAY email address, "newhire@samedayhealth.com," copying James.

47.    The letter of employment stated, in part, that Plaintiff was offered the Certified Medical

Assistant position "with Sameday Technologies Inc., employed by Maerly Payroll

Processing LLC" initially reporting to James. The letter was signed by Defendant

STAUDENBAUR, as "Head of Human Resources."

48.    On or about June 22, 2022, Plaintiff received an e-mail from ADP informing her to go to

Concentra Medical Center in Stamford, Connecticut for a drug test and PPD test.

49.    Shortly thereafter, Plaintiff contacted "Norma" and asked if there was a location closer to

Plaintiff that she would be able to submit to the tests required by Defendants. Plaintiff

explained that she did not have a license and a rideshare service would cost her at least

$75-$80 round trip. Plaintiff also explained that she had a PPD test done the year prior.

50.    On or about June 23, 2022, "Norma" stated that she would be able to use Plaintiff's PPD

results from the year prior, however she would still have to travel to Stamford, Connecticut

to submit to a drug test. Plaintiff explained that there was a Lab Corp closer to her home

where she would be able to submit to a drug test. Plaintiff's request was denied.

51.    On or about June 29, 2022, Plaintiff submitted to a drug test in Stamford, Connecticut.

52.    On or about July 6, 2022, Plaintiff provided "Norma" with her phlebotomy certificate.

53.    On or about July 7, 2022, Plaintiff spoke with James who stated that Plaintiff was cleared,

however did not see Plaintiff's name on the roster to schedule her shifts. James instructed Plaintiff to contact Defendants' Human Resources Department.

54. That same day, Plaintiff received an e-mail from Defendant SAMEDAY email address "NewHire@samedayhealth.com," indicating that Defendants MAERLY were revoking the offer of employment, due to her criminal history. The e-mail stated that Plaintiff had five business days to dispute the decision. Plaintiff was shocked.

55. Plaintiff swiftly disputed Defendants MAERLY's decision and submitted her Certificate of Good Conduct from the New York State Department of Corrections and Community Supervision to "NewHire@samedayhealth.com." The Certificate of Good Conduct specifically states, *inter alia*, "The certificate **provides relief from forfeitures, disabilities or bars to employment and licensing automatically imposed by New York State law as a result of your conviction…**" (emphasis added).

56. On or about July 7, 2022, Plaintiff received an e-mail from "Norma" from Defendant SAMEDAY, through the same e-mail address, "NewHire@samedayhealth.com," which stated "**You cannot have a felony on your record if you work here. You must get that taken off your record before you can be employed with us**. **If you are able to do so, please let us know and we can run another background check. Sorry for the inconvenience and good luck in your future endeavors.**"

57. Plaintiff was devastated.

58. There is no direct relationship between the crimes of which Plaintiff was convicted and the duties of the Certified Medical Assistant position to which Plaintiff applied.

59. Before denying and rescinding Plaintiff's offer of employment due to a criminal conviction, Defendants failed to perform the mandatory analysis, pursuant to the New York

Correction Law's numerous factors, including: (a) the public policy of New York State to encourage the employment of persons previously convicted of one or more criminal offenses; (b) the specific duties and responsibilities necessarily related to the employment; (c) the bearing, if any, the criminal offense for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities; (d) the time which has elapsed since the occurrence of the criminal offense; (e) the age of the person at the time of occurrence of the criminal offense; (f) the seriousness of the offense; or (g) any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

60.  Instead, Defendants failed to hire Plaintiff based solely on her conviction record without performing the proper fact-specific analysis. If Defendants had performed the mandated analysis, they would have found that there is no direct relationship between Plaintiff's conviction and the position to which she applied.

61.  Since her Release, Plaintiff has been a productive and law-abiding citizen of New York.

62.  Since her Release, Plaintiff has consistently sought and secured gainful employment.

63.  A factual investigation would have revealed the impressive extent of Plaintiff's rehabilitation, qualification, and good conduct.

64.  Accordingly, Defendants engaged in unlawful and discriminatory conduct when they revoked and denied Plaintiff's employment solely due to her convictions and wholly unrelated to the position sought.

65.  Plaintiff has been unlawfully discriminated against, humiliated, degraded, victimized, embarrassed, and belittled. As a result, Plaintiff suffers loss of rights, severe emotional distress, loss of income, and earnings.

66.    Defendants' actions and conduct were intentional and intended to harm Plaintiff.

67.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages.

**First Cause of Action for Discrimination**
**Under the New York State Executive Law**

69.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70.    New York State Executive Law § 296(15) provides, in pertinent part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association… to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law…

71.    Defendant SAMEDAY and Defendants MAERLY violated the sections cited herein as set forth.

72.    Accordingly, as a result of the Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**Second Cause of Action for Discrimination**
**Under the New York Correction Law**

73.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

74.    New York Correction Law § 752 provides:

Unfair discrimination against persons previously convicted of one
or more criminal offenses prohibited. No application for any license
or employment, and no employment or license held by an individual,
to which the provisions of this article are applicable, shall be denied
or acted upon adversely by reason of the individual's having been
previously convicted of one or more criminal offenses, or by reason
of a finding of lack of "good moral character" when such finding is
based upon the fact that the individual has previously been convicted
of one or more criminal convictions, unless: (1) there is a direct
relationship between one or more of the previous criminal offenses
and the specific license or employment sought or held by the
individual; or (2) the issuance or continuation of the license or the
granting or continuation of the employment would involve an
unreasonable risk to property or to the safety or welfare of specific
individuals or the general public.

75.    Defendant SAMEDAY and Defendants MAERLY violated the sections cited herein as set

forth.

76.    Accordingly, as a result of the Defendants' unlawful conduct, Plaintiff has been damaged

as set forth herein and is entitled to the maximum compensation available to her under this

statute.

**Third Cause of Action for Discrimination**
**Under the New York State Executive Law**
**(Against Defendant STAUDENBAUR Only)**

77.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

78.   The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

79.   Defendant STAUDENBAUR violated this statute as set forth.

80.   Accordingly, as a result of Defendant STAUDENBAUR's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## Jury Demand

81.   Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by the New York State Human Rights Law, New York State Executive Law § 296, *et seq*., and Article 23-A of the New York Correction Law §§ 750 – 755 in that Defendants discriminated against and failed to hire Plaintiff solely on the basis of Plaintiff's prior criminal conviction;

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering and injury to reputation;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff prejudgment interest;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution

of the action; and

G.    Awarding Plaintiff such other further relief as the Court may deem equitable, just

and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
February 14, 2024

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:    _____
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
dcela@tpglaws.com